Dear Mr. Robertson:
On behalf of the City of Live Oak, you ask substantially the following question:
1. May the City of Live Oak allow its elected officials and its employees to opt out of the city's group health insurance plan and, in lieu thereof, receive compensation in the amount of the unused premium?
2. If so, may the City of Live Oak allow only its elected officials to participate in the optional program?
You state that the City of Live Oak provides health insurance coverage for its elected officers and its full-time employees. The city wishes to allow its elected officials to opt out of the group insurance plan and, in lieu thereof, receive compensation in the amount of the unused premium. To be eligible, the elected official must obtain health insurance coverage under a separate qualifying group health insurance plan, such as through a spouse's group plan, Medicare, or the Veterans Administration. The city may also wish to extend the option to all full-time employees. You indicate that neither the city's charter nor its personnel policies and procedures limit the city's ability to provide health insurance coverage to its elected officials or employees. However, there is no reference in either concerning cash payments to elected officials or full-time employees in lieu of paying health insurance premiums.
Section 112.08(2)(a), Florida Statutes, provides:
 "Notwithstanding any general law or special act to the contrary, every local government unit is authorized to provide and pay out of its available funds for all or part of the premium for life, health, accident, hospitalization, legal expense, or annuity insurance, or all or any kinds of such insurance, for the officers and employees of the local governmental unit and for health, accident, hospitalization, and legal expense insurance for the dependents of such officers and employees upon a group insurance plan and, to that end, to enter into contracts with insurance companies or professional administrators to provide such insurance. . . ."[1]
Clearly, municipalities are authorized by state law to provide life, health, accident, hospitalization, legal expense or annuity insurance to its officers and employees. As stated in Attorney General Opinion 04-17, this office is not aware of any prohibition in the state statute that would limit a city's authority to provide health insurance coverage to the members of its governing body. While section 112.08, Florida Statutes, authorizes a municipality to provide and pay all or part of the premium for insurance coverage, the statute does not speak to the payment of a sum in lieu of providing insurance coverage.
Municipalities, however, are granted home rule powers by section 2(b), Article VIII of the Florida Constitution, which provides:
"Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law." (e.s.)
In recognition of this broad constitutional grant of power, the Legislature adopted the Municipal Home Rule Powers Act, Part I of Chapter 166, Florida Statutes. Section 166.021(1) of that act provides that municipalities "may exercise any power for municipal purposes, except when expressly prohibited by law."
While section 112.08(2), Florida Statutes, specifically recognizes the authority of a municipality to pay premiums to provide insurance for its officers and employees, the statute does not address the payment of money directly to the officer or employee in lieu of the premium payment, should the officer and employee otherwise have insurance coverage. Thus, absent a statutory prohibition, it is the governing body of the city that must make a determination that such payments serve a municipal purpose and act accordingly.
In Attorney General Opinion 04-17, this office concluded that the term "compensation" generally includes benefits, such as medical insurance, provided to an officer and employee. It would appear that the payment of the cash that would have been expended for the insurance premium would constitute part of an officer's or employee's compensation package. The governing body of the city, therefore, must make a determination of whether such compensation should be paid to the city's elected officials or full-time employees.
Section 215.425, Florida Statutes, provides in pertinent part:
 "No extra compensation shall be made to any officer, agent, employee, or contractor after the service has been rendered or the contract made; nor shall any money be appropriated or paid on any claim the subject matter of which has not been provided for by preexisting laws, unless such compensation or claim is allowed by a law enacted by two-thirds of the members elected to each house of the Legislature. . . . The provisions of this section do not apply . . . to extra compensation given to county, municipal, or special district employees pursuant to policies adopted by county or municipal ordinances or resolutions of governing boards of special districts or to employees of the clerk of the circuit court pursuant to written policy of the clerk; or to a clothing and maintenance allowance given to plainclothes deputies pursuant to s. 30.49."
Extra compensation generally refers to an additional payment for services performed or compensation over and above that fixed by contract or law when the services are rendered.[2] Given the prospective nature of the proposed program and the city's intention to implement it by passage of an ordinance, it would not appear that the payments would be considered "extra compensation" prohibited by section 215.425, Florida Statutes.
While no statutory provisions have been cited or found which would prohibit the extension of the compensation package only to elected officials of the city and not to its full-time employees, any limitations in the city's charter or personnel policies should be considered.[3] Absent any restrictions in the charter or policies, it would not appear that the city would be precluded from extending different benefits to distinguishable classifications of employees and elected officials.[4]
Accordingly, the City of Live Oak may allow its elected officials and its employees to opt out of the city's group health insurance plan and, in lieu thereof, receive compensation in the amount of the unused premium. Absent a limitation in the city's charter or personnel rules, the city may allow only its elected officials to participate in the optional program.
Sincerely,
 Bill McCollum Attorney General
BM/tals
[1] "Governmental unit" is defined as "any county, municipality, community college district, school board, or special district or any county officer listed in s. 1(d), Art. VIII of the State Constitution."
[2] See, e.g., Ops. Att'y Gen. Fla. 89-53 (1989) and 75-279 (1975), stating that the term "denotes something done or furnished in addition to, or in excess of the requirement of the contract; something not required in the performance of the contract."
[3] While you have indicated that neither the city's charter nor its personnel policies limit the city's ability to provide insurance to its elected officials or full-time employees, there may be provisions in these governing documents addressing the payment of compensation to these separate groups.
[4] Cf. s. 110.123(4)(c), Fla. Stat., providing:
 "During each policy or budget year, no state agency shall contribute a greater dollar amount of the premium cost for its officers or employees for any plan option under the state group insurance program than any other agency for similar officers and employees, nor shall any greater dollar amount of premium cost be made for employees in one state collective bargaining unit than for those in any other state collective bargaining unit. Nothing in this section prohibits the use of different levels of state contributions for positions exempt from career service."